UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/2023
```

ELAIACHI ELBOUTE,

                           Plaintiff,

          -against-

HIGHGATE HOTELS, L.P. and OYO
HOTEL TIMES SQ.,

                           Defendants.

1:22-cv-7609 (MKV)

**MEMORANDUM OPINION
AND ORDER GRANTING
MOTION TO DISMISS AND
DENYING MOTION FOR
APPOINTMENT OF COUNSEL**

MARY KAY VYSKOCIL, United States District Judge:

        *Pro se* Plaintiff Elaiachi Elboute brings this action against his former employers,

Defendants Highgate Hotels and OYO Hotel Times Square (collectively, "Defendants"), alleging

violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII");

the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et. seq.*, ("ADEA"); the

New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); and the New

York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").  Defendants

move to dismiss under Federal Rule of Civil Procedure 12(b)(6).  In response, Elboute seeks

"permission to put mes [sic] documeutations [sic] on CD for more proof" and moves for the

appointment of *pro bono* counsel.  For the following reasons, the motion to submit additional

evidence is GRANTED, the motion for appointment of counsel is DENIED, and the motion to

dismiss is GRANTED.

**BACKGROUND**[1]

        Elboute began working for the OYO Hotel (the "Hotel") in June 2012.  *See* New York

State Division of Human Rights Decision 2 [ECF No. 20-3] ("NYSDHR Op.").  Elboute was born

---

[1] The following facts are taken from the Complaint and accepted as true for purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Given Elboute's *pro se* status, the Court also considers allegations from his

in 1959 and served as the "oldest houseman" at the Hotel.  Complaint 4 [ECF No. 2] ("Compl."); Response to Motion 3 [ECF No. 27] ("First Opp.").[2]  While working at the Hotel, Elboute served as "an outspoken [union] representative for [his] colleagues" who spoke "up about working conditions."  First Opp. 5.

During the COVID-19 pandemic, the Hotel began housing homeless individuals.  Compl. 12.  Employees "became fearful to work during this period" because the homeless guests harassed employees and were physically destructive to Hotel property.  Compl. 12.  During this period, Elboute began working a new night shift.  Compl. 12.  He expressed concerns about working this shift "as an older person" and felt that he was assigned to tasks he "could not support . . . as an old man."  Compl. 12; First Opp. 3.

Elboute was terminated in March 2021 for theft of company time.  Compl. 12.  Specifically, the Hotel alleged that over the course of three shifts, Elboute spent fourteen hours sitting in the employees' locker room and performing no work.  *See* Arbitration Decision 2 [ECF No. 20-1] ("Arb. Op.").  Elboute filed a grievance with his union (the "Union"), and the Union subsequently represented Elboute in a proceeding before Alvin Blyer, an independent industry arbitrator (the "Arbitrator").  *See* Arb. Op. 2; National Labor Relations Board Decision 2 [ECF No. 20-2] ("NLRB Op.").  At the arbitration, the Union argued that Elboute went to the locker room to use

---

opposition brief.  *See Van Orden v. City of Port Jervis*, No. 20-CV-07207, 2022 WL 1667024, at *1 n.4 (S.D.N.Y. May 25, 2022) ("Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition memorandum where they are consistent with the allegations contained in the pleading.").  Finally, the Court considers facts from the public record of Elboute's proceedings before an independent industry arbitrator, *see* Arbitration Decision [ECF No. 20-1], the National Labor Relations Board, *see* National Labor Relations Board Decision [ECF No. 20-2], and the New York State Division of Human Rights, *see* New York State Division of Human Rights Decision [ECF No. 20-3], (which were submitted by Defendants in support of their motion) because they are incorporated by reference into the Complaint and opposition brief.  *See Chambers v. Time Warner. Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference.'")  In addition, the Court may take judicial notice of these documents as public records.  *See* Fed. R. Evid. 201.

[2] Any pincites to the Complaint or opposition briefs refer to the PDF pagination.

the restroom because he was suffering from diarrhea.  *See* Arb. Op. 2.  The Arbitrator ultimately concluded there was just cause to terminate Elboute.  *See* Compl. 14; Arb. Op. 4.

Elboute subsequently filed a charge with the National Labor Relations Board ("NLRB"), alleging that he was discharged in retaliation for his union activities.  NLRB Op. 2.  Because Elboute was "afforded the opportunity to present [his] arguments and testify" before the Arbitrator, the NLRB deferred to the Arbitrator's award and dismissed the charge.  NLRB Op. 2–3.  Elboute also filed a complaint with the New York State Division of Human Rights ("NYSDHR"), this time alleging he was terminated because of his age and his opposition to discrimination.  *See* NYSDHR Op. 2.  The NYSDHR determined there was "no probable cause" to find that Defendants engaged in any discriminatory practice.  NYSDHR Op. 2.

Elboute filed his *pro se* Complaint within 90 days of receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC").[3]  *See* Compl. 8.  Elboute asserts that his "dismissal was connected to [his] age and protected status as a union delegate."  Compl. 12.  Liberally construing the allegations of the Complaint, Elboute appears to allege claims for: (1) age discrimination in violation of the ADEA, the NYSHRL, and the NYCHRL, and (2) retaliation for union activism in violation of Title VII.

Defendants moved to dismiss under Rule 12(b)(6).  *See* Motion to Dismiss [ECF No. 19]; Memorandum of Law in Support [ECF No. 20] ("Def. Mem.").  Along with their motion, Defendants provided the Court with decisions of: (1) the independent arbitrator, dated April 22, 2021, *see* Arb. Op.; (2) the NLRB ruling, dated July 9, 2021, *see* NLRB Op.; and (3) the NYSDHR opinion, dated May 12, 2022, *see* NYSDHR Op.  The Court takes judicial notice of these documents.  *See supra* note 1.  In response, Elboute submitted two different documents, each titled

---

[3] Elboute attached the EEOC right to sue letter to his Complaint but did not provide the EEOC charge.  *See* Compl. 8–11.

"response to motion." *See* First Opp. [ECF No. 27]; Response to Motion [ECF No. 28] ("Second Opp."). Given the liberality afforded to *pro se* litigants, the Court considers both filings. Defendants replied. *See* Reply Memorandum of Law [ECF No. 29] ("Reply").

Elboute also moves for the appointment of *pro bono* counsel. *See* Application for the Court to Request *Pro Bono* Counsel [ECF No. 18] ("PBC"). Defendants did not respond.

Finally, Plaintiff moves for "permission to put mes [sic] documeutations [sic] on CD for more proof." Motion [ECF No. 25]. Again, Defendants did not respond. Notwithstanding the fact that the Court had not yet ruled on the motion, Plaintiff proceeded to mail Chambers a CD with nearly twenty photographs that, Plaintiff contends, depict the Hotel while it was housing homeless guests. *See* Second Opp. 1. The Court grants the motion to submit additional evidence and has considered the photographs in resolving the pending motions.

## LEGAL STANDARDS

### I.      Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court may also consider "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

Where, as here, the Complaint is filed *pro se*, "it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738

F.3d 509, 515 (2d Cir. 2013) (citation omitted).  Even so, "a *pro se* complaint must state a plausible

claim for relief."  *Id.*; *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se*

case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").

## II.    Motion for Appointment of Counsel

In civil cases, there is no requirement that the Court provide indigent litigants with counsel.

*See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).  Instead, a district court has "[b]road

discretion" in determining whether to seek *pro bono* counsel.  *Id.*; *see also* 28 U.S.C. § 1915(e)(1)

("The court *may* request an attorney to represent any person unable to afford counsel." (emphasis

added)).  In deciding whether to grant such a motion, the Court "must first ascertain whether the

litigant is able to afford or otherwise obtain counsel."  *Terminate Control Corp. v. Horowitz*, 28

F.3d 1335, 1341 (2d Cir. 1994).  The Court should then consider, among other factors, "whether

the indigent's position seems likely to be of substance."  *Hodge*, 802 F.2d at 61; *see also Hooks v.*

*City of New York*, No. 21-CV-10771, 2022 WL 16964010, at *11 (S.D.N.Y. Nov. 16, 2022).

## <u>ANALYSIS</u>

## I.    The Motion to Dismiss Is Granted

Defendants move to dismiss on two grounds: (1) Elboute's claims are barred by the

doctrine of collateral estoppel and (2) Elboute does not plausibly allege that he was terminated

because of his age or union activity.[4]  *See* Def. Mem. 5–6, 8–9, Reply 1–4.

---

[4] Defendants also move to dismiss the state and city law claims as barred by the election of remedies limitation in NYSHRL § 279(9).  *See* Def. Mem. 7.  As discussed below, because Elboute's federal law claims are dismissed, the Court declines to address the state and city claims.

A.    _Elboute's Claims Are Not Barred by Collateral Estoppel_

Defendants argue that Elboute's claims are barred by the NYSDHR's "no probable cause" finding.  *See* Def. Mem. at 8–9.[5]  The doctrine of collateral estoppel, or issue preclusion, precludes a party from relitigating a factual or legal issue that the party previously litigated and lost in an earlier action.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979).  Federal courts apply the collateral estoppel rules of the state that rendered the earlier judgment.  *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (citing *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)).

In New York, "collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (N.Y. 1985)).  "The party seeking to invoke collateral estoppel has the burden to show the identity of the issues, while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate."  *In re Dunn*, 24 N.Y.3d 699, 704, 27 N.E.3d 465, 468, 3 N.Y.S.3d 751, 754 (N.Y. 2015).  Courts in this Circuit have afforded preclusive effect to NYSDHR proceedings.  *See, e.g.*, *Evans v. N.Y. Botanical Garden*, No. 02-CV-3591, 2002 WL 31002814, at *5 (S.D.N.Y. Sept. 4, 2002); *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 183 (E.D.N.Y. 2006).

Elboute contends that his case was not "fully evaluated" because there was no investigation, he only had "an opportunity to write a rebuttal letter," and the NYSDHR "simply

---

[5] Defendants also assert—without authority—that Elboute is collaterally estopped from asserting his claims by the EEOC's issuance of a right to sue letter.  Def. Mem. 8.  That assertion makes little sense, as the ADEA and Title VII require individuals to exhaust their administrative remedies to the EEOC before filing a lawsuit in federal court.  *See Pajooh v. Dep't of Sanitation*, No. 11-CV-3116, 2012 WL 4465370, at *4 (S.D.N.Y. Sept. 27, 2012), *aff'd*, 547 F. App'x 73 (2d Cir. 2013) ("Title VII *requires* an individual to exhaust his or her administrative remedies by raising those claims with the EEOC" (emphasis added)); *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 199 (S.D.N.Y. 2021) ("[T]he ADEA . . . sets out a statutory administrative exhaustion requirement prior to filing suit.").

evaluat[ed] . . . the previous documents." First Opp. 2–3.  The Court construes these allegations as an argument that Elboute did not have a full and fair opportunity to litigate before the DHR. *See Hogan*, 738 F.3d at 515.

In evaluating whether Elboute had a full and fair opportunity to litigate, the Court "must consider the 'realities of the prior litigation,' including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *Evans*, 2002 WL 31002814, at *5 (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501, 467 N.E.2d 487, 491, 478 N.Y.S.2d 823, 827 (N.Y. 1984)).  Among other things, the Court considers whether the NYSDHR investigation included "any exchange of discovery, witness interviews, conferences between the parties, or hearings." *Martin v. City Univ. of N.Y.*, No. 17-CV-6791, 2018 WL 6510805, at *6 (S.D.N.Y. Dec. 11, 2018) (citation omitted).

The Court cannot conclude that Elboute had a full and fair opportunity to litigate before the NYSDHR.  Although Elboute was represented by his Union at the initial arbitration, the record indicates that he proceeded *pro se* before the NYSDHR (and in all other forums).  *See* First Opp. 2.  Elboute's *pro se* status counsels against affording the NYSDHR determination preclusive effect.  *See, e.g.*, *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 736 (2d Cir. 2001) (explaining that *pro se* plaintiff "could not have been expected or able to frame her evidence within the context of the specific legal issues" and would not " necessarily have known what facts were most relevant or persuasive in proving her case"); *Ramirez v. NYP Holdings, Inc.*, No. 18-CV-12058, 2020 WL 470011, at *6 (S.D.N.Y. Jan. 29, 2020) ("[T]he Court finds it significant that Plaintiff was *pro se* before the SDHR.").  Moreover, it does not appear that any discovery was exchanged, witnesses were interviewed, or hearings were held.  Indeed, [t]he only pertinent document is the [NYSDHR's] written opinion, which discloses no information about the process

7

itself." *Martin*, 2018 WL 6510805, at *7.  Given the limited information and the latitude owed to *pro se* litigants, the Court finds Elboute did not have a full and fair opportunity to litigate his claims before the NYSDHR.

     B.    <u>*Elboute Fails to State an ADEA Claim*</u>

Elboute alleges in this action that his dismissal "was connected to" his "age" because he was the "oldest houseman" and was assigned to tasks he "could not support . . . as an old man." Compl. 12; First Opp. 4.  The Court construes these allegations as an ADEA discrimination claim.

Under the ADEA, employers may not discriminate against employees over the age of forty. *See* 29 U.S.C. §§ 621–634.  "A *prima facie* case of age discrimination requires that plaintiffs demonstrate membership in a protected class, qualification for their position, an adverse employment action, and circumstances that support an inference of age discrimination." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).  To survive a motion to dismiss, Elboute must allege facts giving "plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Plaintiff alleges no such facts.  He includes no allegations, for example, that any comment was ever made about his age, that he was treated adversely because of his age, or that he was replaced by a younger employee.  Accordingly, he fails to plausibly allege an ADEA claim.  *See Littlejohn*, 795 F.3d at 311 (complaint must allege facts giving "plausible support to a minimal inference of discriminatory motivation"); *Hogan v. Fischer*, 738 F.3d at 515 ("a *pro se* complaint must state a plausible claim for relief"); *Mansaray v. Kraus Sec. Serv.*, No. 20-CV-1415, 2022 WL

445790, at *6 (S.D.N.Y. Feb. 14, 2022) (dismissing complaint where *pro se* plaintiff "allege[d] no facts in support of an inference that he was discriminated against based on his age").

      C.    *Elboute Fails to State a Title VII Retaliation Claim*

Elboute alleges that his dismissal "was connected to" his "protected status as a union delegate." Compl. 12. Specifically, he contends that he was "an outspoken representative for [his] colleagues" who spoke "up about working conditions." First Opp. 5. The Court construes these allegations as a Title VII retaliation claim for union activism.

These allegations also fail to state a claim. "Title VII does not provide redress for employees alleging discrimination based on their participation in union activities." *Butler v. Potter*, No. 06-CV-3828, 2009 WL 804722, at *10 (E.D.N.Y. Mar. 26, 2009); *see also Drake v. Delta Air Lines, Inc.*, No. 94-CV-5944, 1997 WL 397498, at *2 (E.D.N.Y. July 10, 1997), *aff'd*, 147 F.3d 169 (2d Cir. 1998) ("Drake cannot bring a claim for relief under Title VII since that legislation does not prohibit employment discrimination on the basis of anti-union sentiment."). Instead, Title VII prohibits retaliation based on "protected activity" which "refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e–3). Because Elboute does not allege that his union activities "consisted of opposition to statutorily prohibited discrimination," he fails to state a legally cognizable claim and this claim is therefore dismissed. *Smith v. Johnson*, 636 F. App'x 34, 37 (2d Cir. 2016).[6]

---

[6] The Complaint describes a "hostile work environment" due to Elboute's fear of "getting attacked" while the Hotel housed homeless individuals. *See* Compl. 18. These allegations do not state a hostile workplace claim because mistreatment at work is actionable "only when it occurs *because of* an employee's protected characteristic." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (cleaned up) (emphasis added). There is no such allegation here. The same is true of any contention that Defendants failed to provide employees with "safety equipment." First Opp. 4. Finally, the opposition brief references a "hostile work environment" on account of an unnamed "manager" who "had a pattern of discriminatory behavior" and "a history of belittling and mistreatment of the staff." *See* First Opp. 5. To the extent this raises a hostile workplace claim, Elboute again fails to allege that he experienced hostility "because of" his age. *Rivera*, 743 F.3d at 20. Further, based on the information before the Court,

D.      *The Court Declines to Exercise Supplemental*
        *Jurisdiction Over Elboute's State Law Claims*

Elboute also appears to allege violations of various state laws, including the NYSHRL and

NYCHRL.  *See* Compl. III.B.  Because, for the reasons above, Elboute's federal law claims are

dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims and

does not consider their merits.  *See* 28 U.S.C. § 1367(c)(3).

## II.      The Motion For Appointment of Counsel is Denied

Elboute also moves for the appointment of *pro bono* counsel.  In evaluating this motion,

the Court "must first ascertain whether [Elboute] is able to afford or otherwise obtain counsel,"

*Horowitz*, 28 F.3d at 1341, and will then consider "whether [Elboute's] position seems likely to

be of substance," *Hodge*, 802 F.2d at 61.

As an initial matter, although Elboute has been granted leave to proceed *in forma pauperis*,

*see* Order Granting IFP Application [ECF No. 3], the Court has serious reservations about

Elboute's purported inability to afford counsel.  Elboute writes in his motion: "I try private lawyer

Also [sic] denied because whatever getting from it is not worth it."  *See* PBC 2.  Although difficult

to decipher, this language suggests that Elboute may have the means to retain counsel, but was

unable to find a lawyer who thought his case was worth pursuing.

Even assuming Elboute was unable to afford his own counsel, the Court still cannot

conclude that his position is "likely . . . of substance," for the reasons discussed above.  *Hodge*,

802 F.2d at 61; *see also Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)

("Counsel should not be appointed in a case where the merits of the indigent's claim are thin and

---

it does not appear that Elboute complained about a manager in his EEOC Charge, meaning this claim would also fail
for lack of administrative exhaustion.  *See* First Opp. 2 (EEOC "simply evaluat[ed] . . . previous documents"); *Pajooh*,
2012 WL 4465370, at *4; 42 U.S.C. § 2000e-5(f).

his chances of prevailing are therefore poor.").  The motion for appointment of counsel is therefore denied.

### III.    Elboute is Granted Leave to Amend

Rule 15 instructs the Court to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Moreover, a *pro se* complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives *any* indication that a valid claim might be stated."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (cleaned up).  Because Elboute has not yet amended his Complaint and may conceivably be able to state a claim for discrimination or retaliation, Elboute is granted leave to amend his Complaint.

## <u>CONCLUSION</u>

For these reasons, the motion to file further evidence is GRANTED, the motion for appointment of *pro bono* counsel is DENIED, and the motion to dismiss is GRANTED.  Plaintiff must file any amended complaint within 30 days of the date of this Order.

The Clerk of Court is respectfully requested to terminate docket entries 18, 19, and 25.  The Clerk of Court is further requested to mail a copy of this Order to the *pro se* Plaintiff at the address of record.

**SO ORDERED.**

Date:  **August 10, 2023**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**